[Crim. No. 1807. First Appellate District, Division Two.—May 23, 1934.]

In the Matter of the Application of W. C. G. McDONNELL for a Writ of Habeas Corpus on Behalf of GEORGE DAVIS (True Name PATRICK McCORMACK).

Brown, McDonnell, Mackin & Brown, Edmund G. Brown and Alfred J. Hennessy for Petitioner.

Matthew Brady, District Attorney, John J. McMahon, Assistant District Attorney, Peter J. Mullins, Deputy District Attorney, and Leo A. Cunningham for Respondent.

STURTEVANT, J.—This is an application for a writ of *habeas corpus*. The application was based on the claim that Davis has been held, without reasonable or probable cause, for trial in the superior court on a charge of murder.

To the petition there are attached as an exhibit the depositions taken before the committing magistrate. From the record the following facts appear: On July 8, 1930, George Davis was in George Riley's night club at Precita and Mission Streets in San Francisco at about 2:30 A. M. George Riley was engaged in bootlegging. His place of business consisted of an L-shaped room. At the further end of the room was a piano which was being played, and Davis was in that part of the house. During the evening one Thomas Fayne, accompanied by Ryan, Burns and Craig, entered the other portion of the room. They had been drinking all day. There is evidence that after they entered the house they were served with drinks, but there is no evidence that Davis had any conversation with any one of them. Some time after midnight Fayne and his associates left the house and started towards Twenty-fifth and Mission. After they had gone a block or so a shooting occurred. One or more shots were fired. Ryan testified that thereupon Fayne dropped down on the sidewalk. His companions endeavored to get an automobile to take him to a hospital. When the ambulance arrived Fayne was dead. Ryan testified that it was very dark, that he did not see where the shots came from, and that he did not see any other person in that immediate neighborhood. After Fayne and his associates left Riley's place, Davis went out, but there is not a particle of evidence where he went. Shortly after the shooting officers arrived and arrested Fayne's associates and they were taken back to the night club. They arrived there about ten minutes after they had left. There is evidence that the night club was closed the following day and that Davis was not seen by officer Allen McGinn until he arrested him about four years thereafter. There is some evidence to the effect that between the date of the shooting and the date of the arrest Davis had been in Seattle and in Los Angeles. There is also some hearsay evidence that at some time, date not shown, another person went to Davis' residence and obtained the latter's clothes.

Having called attention to the foregoing facts Davis claims he is being held without reasonable or probable cause and that he should be discharged. We think the contention must be sustained. ■ In 12 Ruling Case Law, at page 1188, the author states: "After a prisoner has been committed by a magistrate to answer for a crime, he is entitled to test the jurisdiction of such magistrate to commit him, by a writ of *habeas corpus;* and it has frequently been held that in the absence of any legal evidence whatever that a crime has been committed, or that the prisoner was guilty thereof, the magistrate is without jurisdiction to issue an order of commitment, and the prisoner is entitled to the writ of *habeas corpus* to ascertain such facts and to obtain his discharge."

■ Measuring the evidence in the instant case with the rule as quoted, it does not appear whether the shot that killed Fayne was accidental, self-inflicted or the act of another. If it was the act of another there is not a particle of evidence which connects George Davis therewith, nor that connects any one of the several other persons who were present at the scene of the homicide.

■ However, the respondent states that flight was evidence of guilt. In the first place, there was no evidence of flight. As to what time, with relation to the shooting, Davis was at Seattle or Los Angeles does not appear. It does appear that at some time within the four years following the shooting he was in one or the other of those places. There is not a particle of evidence that Davis knew he was accused of the homicide before he was arrested. Under those circumstances absence from San Francisco was not evidence of flight. (*People* v. *Jones,* 160 Cal. 358 [117 Pac. 176].)

The prisoner is discharged.

Nourse, P. J., and Spence, J., concurred.